TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

-------------------------------------------------------------------------------------------------

FROM: 20446009
TO:
SUBJECT: 1-SECOND AMENDED COMPLAINT
DATE: 02/10/2021 09:33:44 AM

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

RHONDA FLEMING,
  Plaintiff,

v.                                    NO.  4:20-CV-000545-WS/MJF
                                      JURY DEMAND

UNITED STATES OF AMERICA,
  Defendant.

SECOND AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT

The Plaintiff, Rhonda Fleming, files this Second Amended Complaint for Damages against the above named Defendant, requesting relief on claims of negligence, negligence per se, violations of the 8th, 14th Amendment, and Equal Protection Clause of the United States Constitution,  intentional infliction of emotional distress pursuant to 28 USC Section 1346-Federal Tort Claim Act ("FTCA"), 42 USC Section 1983, 42 USC Section 4042(a)(2) and (3), and Bureau of Prisons Program Statement 3713.29, Declaratory Judgment Act, and any other applicable federal, state, and/or constitutional laws.

The Plaintiff also brings a habeas corpus claim pursuant to 28 USC Section 2241 for transfer to home confinement due to the COVID-19 virus, the unconstitutional use of PATTERN scoring to grant or deny transfers to home confinement, in relation to an improper disciplinary action against the Plaintiff in the last year, prior to the declaration of a worldwide pandemic.

I. INTRODUCTION

This Complaint arises out the mismanagement of funds appropriated for the care and safety of federal inmates at FCI-Tallahassee, before and during the COVID-19 virus pandemic.  Unconstitutional management decisions by prison  officials prior to the declaration of a worldwide pandemic, caused additional harm, physically and emotionally to the Plaintiff.

The events from November 2018 to the present, cumulatively, have violated the Plaintiff's constitutional and statutory rights to be physically clean, received adequate medical care, be housed in a safe and clean building suitable for humans, and be reasonably safe from from violence and drug abusers.

The #1 problem, which leads to the violation of prisoner's rights, is a lack of competent staff.  The prison was severely understaffed in 2018 when the Plaintiff arrived, and during the pandemic, it became untenable.  The inmates were in control of the prison, fighting and doing drugs 24 hours a day.

At this time, there are 217 inmates and 34 employees sick with the virus.  The prison has run out of isolation beds, so they are being left in the housing units with inmates that are NOT POSITIVE for the virus.  This is criminal because no one knows the long term effects of the virus, which could cause death, now or be attributable to death years from now.

Inmates, who are not sick, are being forced to work 14 hour days and if they refuse, they have been told they will be placed in the Special Housing Unit and receive an incident report.  This is going on right now because the prison does not have enough employees to run the prison. These inmates return to the Plaintiff's housing unit, A-South, and have not been given the proper personal protective equipment to stop the spreading of the virus.

The Plaintiff filed this Complaint, during the pandemic, to save her life and the lives of other inmates and employees.  The Director and Warden have failed to  met the requirements of 18 USC Section 4042, during this pandemic, by failing to provide the four quadrants to prevent the spreading of COVID-19: cumulative time away from the virus, distance from persons potentially carrying the virus, sufficient ventilation in the housing units, and masks.
II. PARTIES

1. Plaintiff Rhonda Fleming is a female federal inmate housed at FCI-Tallahassee since 2018.  The Plaintiff has been in the

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

--------------------------------------------------------------------------------------------------

Federal Bureau of Prisons custody, continuously, since December 2007, for Medicare fraud.

2.  Defendant United States of America, their agency and and employees are responsible for the abuse suffered by the Plaintiff, as stated below.  Defendant United States is a sovereign country subject to liability and monetary damages for the wrongful conduct of their employees and agency pursuant to the Federal Tort Claims Act ("FTCA").  The initial Complaint was served on the Defendant, to the Attorney General's Office, in Washington, DC.  The Plaintiff was notified of receipt of the Complaint, and Counsel for the Defendant was listed as:

Ms. Marlysha Myrthil
Senior Trial Attorney
U.S. Dept. of Justice-Civil Rights Division
Special Litigation Section
150 M Street, N.E., Room 10-1108
Washington, DC 20530

3.  The Defendant's Counsel will be served with this Second Amended Complaint by the electronic filing of this Complaint, by the United States District Clerk and by email at:  marlysha.myrthil@usdoj.gov

III.  IMMUNE INDIVIDUAL EMPLOYEES

4.  The Federal Employee Liability Reform and Tort Compensation Act was passed into law in 1988 and extended absolute immunity for common law torts to all federal employees regardless of whether the conduct at issue was discretionary or intentional.  But for the immunity protections afforded federal employees under the Act, the individuals below would be liable to the Plaintiff for monetary damages for their misconduct.

5.  Director Michael Carajval and Warden Erica Strong were grossly negligent in their duties to recruit, hire, train, manage, supervise, discipline, and terminate officers and other staff members who failed to follow rules and regulations of the Federal Bureau of Prisons.  The failure to recruit a sufficient number of correctional officers caused the Plaintiff to be injured.

6.  Former Unit Manager Bryant and other unknown employees at FCI-Tallahassee were grossly negligent in housing inmates in bunk beds 2 to 3 inches from each other in A and B-units, and 5 to 6 inches in C and D-unit.

7.  Employees, Officer Sailor-Compound Officer, Education Employee Pinervirgio, and an Unknown Officer in C-Unit the night of October 29, 2019 were grossly negligent for failing to comply with General Post Orders.

VI.  JURISDICTION AND VENUE

8.  The Court has subject matter jurisdiction over this action pursuant to 28 USC Section 1346 (Federal Torts Claim Act) as it involves liability of the United States of America reserved to federal courts.

9.  This court has personal jurisdiction over Defendant United States of America pursuant to 28 USC Section 1402(b) as the acts and omissions set forth herein occurred within this federal judicial district.

10.  The Court has jurisdiction over all claims, state and federal, because the Plaintiff has fully exhausted all administrative remedies available or Ross v. Blake is applicable to a particular claim, wherein the employees of the Defendant have obstructed access to the administrative process, did not process the BP-9, BP-10, or BP-11, or without ability to grant the requested relief, thus making the remedy process, unavailable.

11.  The Plaintiff is unable to provide the administrative remedies that were exhausted because Counselor Harvey refuses to provide access to the copier and the Plaintiff only has her original responses and/or improper rejection notices, which she does not trust to place in the hands of the employees of the Defendant she is suing.  Ultimately, it is the responsibility of the Defendant to prove the administrative remedy process was not appropriately exhausted.

V.  FEDERAL BUREAU OF PRISONS

12.  The Federal Bureau of Prisons ("BOP") is a United States federal law enforcement agency responsible for the custody of individuals who have violated federal laws.  The BOP's state mission is to "protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure."
13.  The BOP has violated its stated mission by failing to have an adequate number of employees.  Simply put, no one can

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

--------------------------------------------------------------------------------------------------

maintain a safe prison without a sufficient number of trained employees.

14. The BOP was short of staff, nationwide, for years, prior to this worldwide pandemic. During this ongoing pandemic, the officers and other employees contracted the virus and spread it to the inmates, many of whom, like the Plaintiff already was not in the best of health.

15. The majority of the claims in this Complaint involve a lack of staff and misappropriation of funding from Congress. There seems to be no one within the BOP or Department of Justice, that holds wardens, the CEO's of each prison, accountable for how millions of dollars are spent.

VI. STATEMENT OF FACTS

16. The Plaintiff arrived at FCI-Tallahassee in October 2018 and was assigned to B-North United, on a top bunk. The housing unit is made up of cubicles, with 4 inmates assigned to each cubicle, two inmates on top bunks and two on bottom bunks.

17. The Plaintiff's bunk, as are all other top bunks in B and C-Unit, was 5 to 6 inches from the next cubicles top bunk. A wall is flush or even in height to the top bunks. This allows one inmate to rollover into the bunk of the inmate next to them, a common occurrence. Essentially, the inmates on top bunks are sleeping in a full size bed, together.

18. The Plaintiff was a recent victim of sexual assault by BOP employees at SFF-Hazelton, therefore, it was very upsetting to awaken to find an inmate's face a or 2 inches from her face or the limbs of that inmate in her bunk.

19. The "wall bunkie"(a nickname used by inmates for the inmate sleeping right next to them) of the Plaintiff because ill, with the flu or a cold. Within 1 or 2 days, the Plaintiff was ill. The Plaintiff had a fever, runny nose, upset stomach, headache, and diarrhea for 8 to 10 days. Signing up for sick call was a waste of time because Health Services simply tells the inmates to go to the commissary and purchase medication.

20. The Plaintiff filed a an 8 1/2 informal grievance, but received no response.

21. The Plaintiff filed a BP-9 in December 2018. Former Unit Manager Bryant was responsible for trying to resolve the BP-9. Mr. Bryant asked the Plaintiff why she had filed the BP-9. The Plaintiff stated that the illness she suffered was caused by sleeping with an inmate and that it was very uncomfortable to be sleeping with a stranger.

22. Mr. Bryant, in a nice way, stated, "I was in the Navy and we slept a lot tighter." The Plaintiff responded, "Sir, this is not the Navy and I did not sign up for this prison. It is improper to have inmates sleeping this close to each other...in fact, I would say it is immoral."

23. Mr. Bryant asked what the Plaintiff wanted him to do. The Plaintiff replied, "The top bunks need to be taken down. In Texas state prison, the feds intervened in a prison case, and made the state of Texas take down their bunks beds. Why would the feds be allowed to do something they told another prison system was unconstitutional?" Mr. Bryant just laughed and stated something to the effect that he was retiring. The conversation ended in a nice way. However, the top bunks remained full, all over the prison.

24. In January 2019, the Plaintiff was suddenly moved to A-Unit, where there are two inmates to a cubicle and no wall bunkie. However, the conditions were just as bad or worse because now inmates were sleeping head-to-head, even closer than in B-Unit, and the cubicles were one-third of the size of B-Unit cubicles. (The Plaintiff respectfully pleads for the Government attorney to come and see this in person).

25. From January 2019 to the present, there has been a large influx of drugs of all kinds in the prison. It is sent in through the mail, visits, or from employees.

26. The Plaintiff and other inmates that don't use drugs had many problems on the compound and in the housing units with inmates getting high. The warden takes all privileges from all inmates in a unit when there is a disruption. 95% of the inmates do not use drugs, but the 5% that do are violent and very disruptive.

27. The Plaintiff was tired of the television being taken or email access being denied because of inmates that get high, specifically one inmate that was getting Saboxen sent into the prison.

28. The Plaintiff contacted SIS, in September/October 2019 and told them that drugs were coming in that inmate's mail.

- 3 -

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

-------------------------------------------------------------------------------------------------

29. On October 29, 2019, at 7:00pm the Plaintiff went to the Education Building to do some legal research. The inmate getting drugs in the prison was in the building. The inmate was not in her uniform, had bags with her, and was high. She was being disruptive in the law library.

30. All inmates must be in uniform, with no bags.

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

---------------------------------------------------------------------------------------------------

FROM: 20446009
TO:
SUBJECT: 2-SECOND AMENDED COMPLAINT
DATE: 02/10/2021 09:35:42 AM

31. There was only one employee on duty in the Education Building, Ms. Pinervirgio, who instructed the inmate Cruz who was improperly dressed to leave the building and return to her housing unit. This order, to return to the housing unit was given at approximately 7:05pm. The Plaintiff was properly dressed and was allowed to be in the Education Building at this time.

32. The prison is run on "controlled movement." This means that at the top of the hour inmates are allowed to go to their units, recreation, or any approved area. The inmates are given 10 minutes. At the end of a controlled movement, the compound officer states over the radio, "The move is closed, secure your areas." Mr. Sailor was the compound officer on October 29, 2019.

33. After the controlled movement was over, at 7:30pm, inmate Cruz came back to the Education Building and assaulted the Plaintiff. Another inmate went to call Ms. Pinervirgio, to get her assistance.

34. When Ms. Pinervirgio entered the room, she did not have her radio on her person, which is required through an employees shift. Ms. Pinervirgio had to leave the room to get her radio.

35. Cruz began to assault the Plaintiff for the second time and the Plaintiff defended herself from harm.

36. Ms. Pinervirgio used her radio to call for help. A lieutenant arrived and he asked what had happened. The Plaintiff explained that the inmate had been put out of the building at the 7:00pm movement, but some how she was able to get out of her housing unit, through the security gate, and back into the Education Building. The inmate breached 3 areas which were suppose to be locked.

37. The Plaintiff had injuries on her neck and arms from the assault and they were noted in the medical file. The Plaintiff has a permanent scar on her wrist wear inmate Cruz grabbed her wrist and scars on her neck. The Plaintiff suffered pain to her head, neck, and stomach. The Plaintiff defended herself from greater injury, as is her right, under the "stand your ground" statute of the state of Florida.

38. The Plaintiff was given an incident report for fighting without a weapon. Cruz was also given an incident report for fighting, but not for being out of bounds.

39. The Plaintiff was seen by the Disciplinary Hearing Officer in November 2019 and was found guilty of the incident report. 27 good conduct days were taken from the Plaintiff.

40. The Plaintiff appealed the findings of the Disciplinary Hearing Officer with the Regional Director and with the Central Office, but they did not restore the 27 days lost. The prison officials refused to acknowledge that 3 security breaches by their employees allowed the inmate to return and assault the Plaintiff. Additionally, the prison officials refused to acknowledge that the Plaintiff had a right to be in the Education Building and to defend herself.

41. The Plaintiff was placed back in A-South unit in December 2019. Her cubicle-mate was Heather Yarber who at the time worked or was assigned to work at UNICOR and on weekends she worked in the visiting room, cleaning this area.

42. In late January to early February 2020, Inmate Yarber became ill. She went to medical and nothing was done although she had all the symptoms of the flu or a cold. She was forced to go to work, but her supervisor told her to just sit in the breakroom.

43. Two or three days later, the Plaintiff was sick. The Plaintiff had the same symptoms as Yarber, along with a bad headache and diarrhea. The Plaintiff became ill because she has a compromised immune system and the housing unit has no room to socially distance from inmates that are sick.

44. Within a week, at least 50% of the unit was sick. This was in February 2020. The Plaintiff and inmate Barbara Lee, who also became ill, spoke to the Health Services Administrator, who gave us the usual brush off.

45. In March 2020, the COVID-19 virus was identified and was being taken seriously. Inmate Lee and the Plaintiff went back to the Health Services Administrator because we were worried about inmates in our unit that were in their 70's and had medical problems. Again, the Plaintiff and others were given the brush off.

- 5-

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

------------------------------------------------------------------------------------------------------

46. The Health Services Administrator, Ms. Smiledge  and the Food Service Supervisor-Mr. China, came to the unit with other prison officials to announce the modified lockdown due to the virus.  The Plaintiff personally asked the Health Services Administrator if  there would be testing because inmates in the unit were sick.  She just smiled.  The Plaintiff responded, "Oh I get it.  If you don't test us, you can keep reporting you don't have any cases."  Mr. China was present for the conversation, but made no comment.

47. In March 2020, former Attorney General William Barr issued a Memorandum ordering wardens to transfer non-violent inmates to home confinement that were either "medically vulnerable" or to provide for "social distancing."

48. This Memorandum was ignored by the Director and Warden.  The prison remained at full capacity.  In fact, the warden continued to accept inmates from the Oklahoma Transfer Center and other county jails, that tested positive for the virus, upon their arrival at FCI-Tallahassee.

49. The Plaintiff was deprived of the ability to socially distance from other inmates as the virus spread throughout the prison. The cubicles inmates share do not allow for 6 feet to socially distance.  Housing Unit, A-South is too small of an area to house 86 inmates.

50. Officers were not given the proper protective equipment/clothing to prevent them from spreading the virus to inmates. Officers regularly worked an 8 hour shift in the housing units that were under a quarantine lockdown, meaning that the inmates could not leave the housing unit for any reason.  Then, the same officer would work in other units, not yet infected with the virus. About a week later, that unit had several cases of the virus and have to be placed on a quarantine lockdown.

51. The Plaintiff was denied regular recreation and subsequently became pre-diabetic, gained over 50 pounds and meets the standard to be considered obese due to being locked in the unit 24 hours a day.  In December 2019, the Plaintiff was 166 pounds and this is documented in her medical files.

52. In  May 2020, the Plaintiff began waking up congested, short of breath, and coughing. When the medical staff came to the unit for sick call, they  pointed to the ceiling and stated, "You have allergies just like many others, it is environmental, it is the mold, so there is nothing we can do about it."  The Plaintiff was told to buy aspirin and allergy pills, for a medical condition caused by the Defendant, mold on the ceiling and walls of the housing unit.

53. The Plaintiff's coughing and congestion has become worst because she is inhaling the mold spores 24 hours a day.  The respiratory system does not have fresh air, a break, from inhaling a toxic substance.

54. The Plaintiff filed administrative remedies and her tort claims on the lack of space to socially distance, the mold, the roof that was leaking in the beds and in light fixtures, and on the denial of transfer to home confinement, as a medically vulnerable person.

55. The Plaintiff cited Martinez-Brooks v. Easter, No. 3:20-cv-00569(MPS), (D. Conn. 2020), where the BOP and the Department of Justice had entered into a settlement to transfer to home confinement, medically vulnerable inmates, with medical conditions similar to the Plaintiff.  The Plaintiff made a request to the warden that the settlement agreement for inmates at FCI-Danbury was applicable to all inmates in the BOP because the agency was required to treat similarly situated inmates the same.  These request never received a response.

56. The Plaintiff was denied, twice, transfer to home confinement on the basis that her PATTERN score was a LOW and not a MINIMUM.  The use of the PATTERN score, which was created for deciding the amount of good time credits earned for participating in education programs, should not have been used to decide whether or not the Plaintiff would be transferred to home confinement for her safety from the virus.  The Plaintiff filed an administrative remedy on this matter, too.

57. Due to a lack of staff, the prison has had more instances of violence and drug abuse.  More inmates are being placed on suicide watch.  The Plaintiff is locked in a open dorm with mentally ill inmates, that are not receiving treatment.  There have been inmates overdosing in the housing units, requiring emergency medical personnel, an ambulance to rush the inmate to the hospital.  One inmate, last name Felder, was ingesting K-2 and other drugs, and became so violent she assaulted 6 or 8 inmates within a 10 minute span of time.  Several inmates required medical treatment and had black eyes due to the attack by Inmate Felder.

58. From March of 2020 to the present, the Plaintiff has suffered with all over body pain from being trapped in a building with no exercise.  The Plaintiff use to run 5 to 10 miles, 6 days a week.  The Plaintiff is 55 years old and her joints, back, neck, and

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

--------------------------------------------------------------------------------

other areas are in pain from being made to sit in a bed or a hard plastic chair most of the day.  The Plaintiff suffers daily with an upset stomach and diarrhea, because the lack of exercise does not allow food to properly digest.

59.  The officers are overworked and are unable to properly supervise 180 inmates, both sides of the housing unit, when they are forced to work 16 hour shifts, not including the time it takes them to get to the prison.

VII.  STATEMENT OF THE CLAIMS

A.  COUNT-1, NEGLIGENCE AND NEGLIGENCE PER SE

60.  The Plaintiff incorporates by reference the allegations set forth in paragraphs 1-59 of this Complaint for Damages and Declaratory Judgment as if fully set forth herein.

61.  The Defendant's employees had a duty to protect the Plaintiff from viruses by proving housing that allowed for social distancing.  The Plaintiff became ill in November/December 2018 because she was forced to sleep within 4 to 6 inches from an inmate that was ill, with the flu or another virus.  The Defendant breached that duty and that breach was the actual and proximate cause of the Plaintiff's injury.  The Plaintiff suffered headaches, diarrhea, chest pains, fever and at times could barely breath.  Inmates should not be housed in such close quarters and it was reasonable to conclude that the spreading of various illnesses could occur.  When the pandemic started, the Defendant's employees failed to stop placing inmates in top bunks and/or reduce the number of inmates housed in the various units.

62.  The Defendant's employees had a duty to comply with General Post Orders which require that after the closing of the controlled movement, that all doors and gates be secured.  Because the Director and Warden failed to provide a sufficient amount of staff and did not discipline officers that did not comply with the rules, the Plaintiff was assaulted by an inmate 16 years younger than she, and was forced to defend herself, twice, because one employee did not secure the Education Building and was not wearing her radio to call for help.  The Plaintiff suffered numerous wounds, back and neck pains, and still suffers with a left ankle injury due to being kicked by the inmate.

63.  Because the Director and Warden failed to recruit and train a sufficient number of correctional staff, there has been an increase of drug abuse, violence, and suicide attempts at FCI-Tallahassee.  The Plaintiff has been forced to live in conditions in which she is in fear of being attacked, daily, by young inmates on drugs.  Any complaints to the Warden and/or her employees caused the Plaintiff and other inmates to be deprived of email access, phone calls, recreation, and television, which worsened the situation.  The message sent to the inmates reporting drug abuse and physical intimidation was that all access to their families would be taken, so the Plaintiff and other non-violent, non-drug using inmates, are held captive by 5% of the housing unit.  As stated in the paragraphs above, there are not enough correctional officers to prevent violence against the Plaintiff, so the Plaintiff has spent many nights with panic attacks and anxiety after being assaulted in 2019.

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

-------------------------------------------------------------------------------------------------

FROM: 20446009
TO:
SUBJECT: 3-SECOND AMENDED COMPLAINT
DATE: 02/10/2021 09:36:59 AM

B.  COUNT-2, ASSAULT AND BATTERY, VIOLATION OF FLORIDA STATUTE, AND REQUEST FOR DECLARATORY JUDGMENT

64.  See paragraph 60.

65.  Immune Individual Employees Pinervirgio, Sailor, and Unknown Employee assigned to C-Unit, acting within the course and scope of their employment with the BOP as law enforcement officials caused the Plaintiff to be assaulted and battered, by failing to secure the housing unit, gate, and Education Building.

66.  The employees had a duty to secure their areas after the controlled movement ended and failing to do so caused the Plaintiff to be seriously injured.  The Plaintiff remains on pain medications over a year after the assault.

67.  The Plaintiff will be 56 and the assault has caused long term pain in her left ankle, back, and other areas of her body.  The Plaintiff has lost her ability to vigorously exercise and gained over 50 pounds.  The Plaintiff is now pre-diabetic due to the gaining of this weight.

68.  Florida Statute 776.012, the "Stand Your Ground" state law, is actionable against the Defendant.  By law, the Plaintiff is a resident of this state and under the protection of federal and state laws.  The Plaintiff had a statutory right to defend herself.

69.  Due to three breaches of security, and one employee failing to keep her radio on her person, the Plaintiff was assaulted by an inmate.  Twenty-seven good conduct days were wrongfully taken.  When the Plaintiff appealed, she stated that if her 27 days were returned, she would not sue the Defendant for allowing her to be assaulted.  The Defendant's employees had the opportunity to resolve this matter.  Instead, they have caused psychological trauma, emotional distress, depression, physical trauma, as well as pain and suffering.  The Plaintiff would have qualified for transfer to home confinement, if the Defendant's employees had not wrongfully charged her with fighting.

70.  The Plaintiff believes that 28 USC Section 2201, the Declaratory Judgment Act allows the court, in this particular circumstance, to declare that inmates have a right to defend themselves, especially when there is a severe shortage of correctional staff and employees failed to follow security protocols and General Post Orders to secure their post.

C.  COUNT-3, 8TH AMENDMENT VIOLATION

71.  See paragraph 60.

72.  It is cruel and unusual punishment to force the Plaintiff to be assigned to a bunk within 4 to 6 inches of another inmates or within 2 inches in other housing units.  The Plaintiff was physically harmed, suffered emotional distress, and was denied a basic human necessity--the ability to sleep.

73.  The Defendant's employees, specifically Warden Strong, failed to remove top bunks that caused the Plaintiff to share a bed with a stranger, another inmate, or a cubicle with another inmate, denying the Plaintiff the ability to socially distance from other inmates.  The Director and Warden was deliberately indifferent to the health and safety of the Plaintiff, by failing to reasonably reducing the inmate population.

74.  It is cruel and unusual punishment to house the Plaintiff in a building that is condemned.  The roof/ceiling are dangerous because of severe hurricane damage in 2018.  The roof is full of termites and leaks continuously.

75.  The ceiling is covered with mold spores, which causes the Plaintiff to cough, suffer nasal blockage, and other allergy symptoms.  The Plaintiff was forced to pay for medications to treat her allergies, for an environment condition in the housing unit the Defendant's employees failed to correct.  This has caused the Plaintiff to suffer physical and emotional pain.  The employees have failed to repair this roof for almost 3 years

76.  It is cruel and unusual punishment to be subjected to daily drug abuse by inmates which fuels their violence.  As stated above, Inmate Felder became violent and assaulted inmates for no apparent reason.  Whomever was near was hit in the face numerous times, then she moved on to the next inmate.  Inmates did not defend themselves because they did not want to

- 8 -

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

--------------------------------------------------------------------------------

suffer placement in segregation, lose good time, and other privileges, as the Plaintiff did.

D.  COUNT-4, 14TH AMENDMENT VIOLATION

77.  See paragraph 60.

78,  The Defendant's employees are violating the Equal Protection Clause of the 14th Amendment, by entering into a settlement agreement with FCI-Danbury inmates, to transfer to home confinement all medically vulnerable inmates, with the exception of those that might be a threat to the community.

79.  The Plaintiff is a medically vulnerable inmate, non-violent, middle-aged women with a LOW PATTERN score.

80.  Warden Strong has denied the Plaintiff transfer to home confinement, allegedly, because she does not have a MINIMUM PATTERN score, without allowing the myriad of medical problems to be the deciding factor.  The Plaintiff has a white-collar crime and has served over 50% of the sentence.   Former inmate Tasha Michelle Blackburn had no medical problems and a release date of March 2034.  The warden transferred Ms. Blackburn to home confinement in May 2020, to make room for social distancing.  This is the only inmate that was transferred to home confinement pursuant to the CARES Act by the warden, in the Plaintiff's housing unit.

81.  FCI-Danbury inmates, some who have not served 50% of their sentence, have a MEDIUM OR LOW PATTERN Score, have be transferred to home confinement, because the settlement in the Martinez-Brooks case allowed inmates that are medically vulnerable and not a HIGH PATTERN score, to be transferred under the settlement agreement.

82.  The BOP is mandated by federal statute pursuant to 28 CFR Section 551.90, "Non-Discrimination Against Inmates," to be treated equally.  The Defendant has violated the statutory rights of the Plaintiff by failing to allow her medical condition to be the primary grounds for transfer versus a PATTERN score, that some experts have said is useless and unconstitutional because it has a racial bias.

E.  COUNT-5, INFLICTION OF EMOTIONAL DISTRESS

83.  See paragraph 60.

84.  The Director, Warden, and immune employees, acting within the scope of their employment with the BOP, engaged in the intentional infliction of emotional distress of the upon the Plaintiff, as described in paragraphs 16 to 59, 1) exhibiting conduct that was  intentional and reckless with knowledge that emotional distress would likely result, 2) outrageous conduct that went beyond decency tolerated in a civilized country, 3) they were the direct and proximate cause of the emotional distress endured by the Plaintiff, and, 4) their conduct was severe and damaging to the Plaintiff.

85.  The Plaintiff is entitled to damages from the United States of America, under the Federal Tort Claims Act ("FTCA"), for the intentional infliction of emotional distress committed by the Defendant's employees in an amount to be determine at trial.

F.  COUNT-6, FALSE IMPRISONMENT

86.  See paragraph 60.

87.  The Defendant's employees, acting within the scope of their employment, 1) did unlawfully detain and deprive the Plaintiff of her liberty by placing her in segregation and taking 27 good conduct days, 2) such detainment was against the Plaintiff's will and consent, and, 3) such detainment was without legal authority or necessity, and was done in violation of the "Stand Your Ground" statute.

88.  The Plaintiff was held unlawfully held in segregation, deprived of all property, telephone, commissary, and email access for seven weeks.  The Defendant's employees knew there was 3 breaches of security being review that the SIS officer, Ms. Chentnik.  The Plaintiff was questioned by Ms. Chentnik, who later told the Plaintiff that she reviewed the video surveillance cameras for C-Unit, the gate, and the Education Building, and said she identified Inmate Cruz moving about the prison, after the controlled movement was closed.  It is the Plaintiff's belief that the involved employees were disciplined because the investigators for the prison would be required to report this matter to Warden Strong.  Their failure to security their post is a big deal in prison and many officers have been sanctioned for failing to secure their area.

89.  The Plaintiff was wrongfully charged with fighting and the employees are liable for false imprisonment.

-9-

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

---------------------------------------------------------------------------------------

90. The Plaintiff has suffered stomach cramps, headaches, back pain, was deprived of basic hygiene items like lotion and hair products while in segregation. The Plaintiff is entitled to damages pursuant to the FTCA and for violating her constitutional rights.

G. COUNT-7, HABEAS CORPUS RELIEF IN ACCORDANCE WITH SECTION 2241

91. See paragraph 60.

92. The Plaintiff was deprived of 27 good conduct days, transfer to a prison camp, and transfer to home confinement, on the basis that she did not have a right to defend herself, when correctional staff had failed to secure their posts. The first law of human nature is self-preservation.

93. Due to dangerous levels of employee shortages, the Plaintiff was seriously injured and remains on pain medications for her injuries.

94. It is unconstitutional for a prison to be understaffed, leading to security breaches, drug abuse, and violence. The staff shortages are partially to blame for the Plaintiff being assaulted.

95. The Plaintiff is requesting a declaratory judgment, holding, that under the circumstances stated above, inmates have a right to self-defense.

96. It is appropriate for the reasons given, to grant habeas corpus relief, ordering the Director and Warden to restore the 27 good conduct day, and transfer the Plaintiff to home confinement.

H. COUNT-8, VIOLATION OF 18 USC SECTION 4042

97. See paragraph 60.

98. Section 4042 requires that the Defendant provide safe prisons. The Plaintiff had a constitutional and statutory right to a reasonably clean and safe prison.

99. Failure to maintain a sufficient number of correctional officer caused the Plaintiff to be assaulted.

100. The Plaintiff was denied reasonably safe housing because the Defendant's employees continuously maintain overcrowded, dirty, poorly ventilated, housing units.

101. The Plaintiff is due damages for over 2 years of being housed in a condemned building, being assigned to cubicles where the rain leaked from the roof, termites biting the Plaintiff, mold spores, and an overall sense of living in inhumane conditions. These conditions have caused physical pain, emotional pain, as well as depression. The amount of damages is to be determined at trial.

VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court will:

1. Grant judgment in favor of the Plaintiff on her claims for Negligence, Negligence Per Se, Assault & Battery, False Imprisonment, Intentional Infliction of Emotional Distress, and all constitutional claims,

2. Grant Declaratory Judgment on :

   a. Improper housing which denies inmates the ability to practice social distancing,

   b. Inmates have a right to be housed in a building that is structurally sound; and,

   c. Inmates in the state of Florida, have a right to stand their ground if they are assaulted,

3. Grant the Plaintiff a jury trial on all claims triable by jury; and,

TRULINCS 20446009 - FLEMING, RHONDA ANN - Unit: TAL-A-S

---------------------------------------------------------------------------------------------------

4. Grant such other and further relief the Court deems just and proper.

Respectfully Submitted,

_/s/_____
Rhonda Fleming, Plaintiff
February 10, 2021

Reg. No. 20446-009
FCI-Tallahassee
PO Box 5000
Tallahassee, Florida 32314

VERIFICATION IN ACCORDANCE WITH 28 USC SECTION 1746

The Plaintiff, Rhonda Fleming, declares under penalty of perjury that all statement are true and correct. The Plaintiff has complied with FRCVP, Rule 11.

_/s/_____
Rhonda Fleming, Plaintiff
February 0, 2021

CERTIFICATE OF SERVICE

A copy of the Amended Compliant is being served by the electronic filing of the document by the United States District Clerk. The Plaintiff will also serve Marlysha Myrthil, Senior Trial Attorney with the Special Litigation Section, by email and United States Mail, on the same day.

_/s/_____
Rhonda Fleming, Plaintiff

Rhonda Fleming 20446-009
FCI-Tallahassee
P.O. Box 5000
Tallahassee, FL 32314

RECEIVED FEB 16 2021

Tallahassee PO&F 323
FRI 12 FEB 2021   PM

United States District Clerk
1 North Palafox, 2nd Floor
Pensacola, FL 32502

Case 4:20-cv-00545-RH-MJF   Document 15   Filed 02/16/21   Page 12 of 12