## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

RHONDA FLEMING,

      Plaintiff,

v.                                 Case No. 4:20-cv-545-WS/MJF

UNITED STATES OF AMERICA and
WARDEN ERICA STRONG,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Rhonda Fleming—formerly a denizen of the Federal Correctional Institution Tallahassee ("FCIT")—complains about alleged "overcrowding" at the prison and injuries she suffered after an "assault" by another inmate. In her fifth amended complaint, Fleming asserts three claims against the United States under the Federal Tort Claims Act and two *Bivens* claims against Warden Erica Strong. Defendants have moved to dismiss Fleming's claims. Doc. 84. Fleming responded in opposition. Docs. 89, 119. For the reasons set forth below, the District Court should grant in part and deny in part Defendants' motion to dismiss.

## I. BACKGROUND

In October 2018, the Bureau of Prisons ("BOP") transferred Fleming to FCIT and assigned her to the B-North housing unit. Doc. 61 at 6 ¶ 7. Fleming alleges that

the inmates in B-North slept on bunk beds, with only two or three inches of separation between bunk beds. *Id.* at 6-7 ¶ 8.

In January 2019, the BOP reassigned Fleming to the A-South housing unit. *Id.* at 6 ¶ 1. Fleming alleges that the ceiling, walls, and windowsills were "covered with [t]oxic mold" and other unidentified "toxins" and that asbestos also was present. *Id.* ¶ 2. Fleming also alleges that the roof leaked. *Id.* ¶¶ 2, 4.

These conditions allegedly caused Fleming to suffer from "daily headaches," "hair loss," "extreme sudden weight gain," and "memory loss." Doc. 61 at 6 ¶ 5. Fleming also alleges that the "COVID-19 virus is worsened by exposure to mold." *Id.* ¶ 6.

Fleming further alleges that her sleeping conditions remained unchanged during the COVID-19 pandemic. *Id.* at 7 ¶ 10. The sleeping conditions and alleged "overcrowding" at FCIT prevented Fleming from socially distancing during the COVID-19 pandemic. *Id.* at 7-8 ¶¶ 11, 19.

Fleming also alleges that on October 29, 2019, an inmate ("Cruz") "assaulted" her. *Id.* at 8 ¶ 20. According to Fleming, BOP staff required Cruz to leave the education building during a "controlled movement," because Cruz was dressed improperly and possessed "contraband." Doc. 61 at 8 ¶ 21. Ten minutes later, an "order was given over the radio that the movement was closed and to secure the doors and gates of each officer[']s post." *Id.* ¶ 22. Because Cruz's "housing unit

officer failed to secure the door, the gate leading to the Education Building was not locked, and the Education Building was not locked/secured," Cruz allegedly was able to re-enter the education building and "assault" Fleming. *Id.* When the responding employee departed to retrieve her radio, Cruz allegedly "assaulted" Fleming again. *Id.* Fleming purportedly sustained head, neck, and wrist "injuries." *Id.* ¶ 24.

On May 11, 2022, the BOP transferred Fleming to Federal Correctional Institution Dublin in California. Doc. 107.

Fleming attempts to assert claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, and *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). She alleges that the United States is liable under the FTCA because BOP employees were negligent insofar as they:

- failed to remove mold and asbestos and prevent leaks;

- permitted "overcrowding" during the COVID-19 pandemic; and

- failed to follow "General Post Rules" during a "controlled movement."

Doc. 61 at 11-13. She also alleges that Strong violated the Eighth Amendment because Strong permitted the following conditions in Fleming's housing unit:

- a leaking roof, which resulted in a wet bed;

- mold on the ceiling, windowsills, and doors, and in the food-service building;

- more than 80 inmates in "an open dorm"; and

- insufficient "sanitation and ventilation."

*Id.* at 13 ¶ 41. Fleming also alleges that Strong retaliated against Fleming for filing grievances and claims—in violation of the First Amendment—by refusing to "remove" Fleming from these allegedly unsatisfactory conditions. *Id.* at 14 ¶ 48.

Defendants move to dismiss Fleming's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 84. Defendants' Rule 12(b)(1) motion is a facial attack. Doc. 138 at 4-5.

## II. STANDARDS

### A.   <u>Rule 12(b)(1) Standard</u>

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) may raise a factual or facial attack. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)); *see Douglas v. United States*, 814 F.3d 1268, 1274-75 (11th Cir. 2016). A facial attack, like Defendants' attack here, "challenges whether a plaintiff 'has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in [the] complaint are taken as true." *Kennedy*, 998 F.3d at 1230 (quoting *Lawrence*, 919 F.2d at 1529).

**B.**     <u>**Rule 12(b)(6) Standard**</u>

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a claim to survive dismissal, the "complaint must contain sufficient factual matter, accepted as true," to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations that merely suggest the possibility that a defendant acted unlawfully are insufficient; the allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Additionally, "[m]ere 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do,' and a plaintiff cannot rely on 'naked assertions devoid of further factual enhancement.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (internal quotation marks and alteration omitted) (quoting *Iqbal*, 556 U.S. at 678).

Under Rule 12(b)(6), courts accept all well-pleaded factual allegations of the complaint as true and evaluate all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022). Courts also "hold the allegations of a *pro se* complaint to less

stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But courts "cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

### III. DISCUSSION

#### A.    Fleming's FTCA Claims Against the United States

Fleming asserts three FTCA claims: (1) a "social distancing" claim; (2) a "failure to protect" claim; and (3) a "mold and asbestos" claim. Doc. 61 at 11-13.

#### 1.    *"Social Distancing" Claim*

Defendants move to dismiss Fleming's "social distancing" claim because she failed to exhaust her administrative remedies. Doc. 84 at 9-10. Additionally, because the application of the discretionary-function exception to the FTCA is a jurisdictional matter, the undersigned ordered the parties to address the exception's application to this claim. *See Zelaya v. United States*, 781 F.3d 1315, 1339-40 (11th Cir. 2015) (treating the section 2680 exceptions as jurisdictional issues that can be raised *sua sponte*); *Mirmehdi v. United States*, 689 F.3d 975, 984 n.7 (9th Cir. 2012) (considering the discretionary-function exception *sua sponte*).

#### (a).    At This Stage, Dismissal Is Not Warranted for Failure to Exhaust

Before initiating an action under the FTCA, a plaintiff must exhaust all available administrative remedies by presenting the claim to the appropriate federal

agency and receiving a final denial from the agency. 28 U.S.C. § 2675(a); *see* 28 C.F.R. § 543.30; *Douglas*, 814 F.3d at 1279 ("Prisoners may file suit only after final agency action."). A claimant "must provide written notice to the agency that includes (1) sufficient information to enable the agency to investigate the claim, and (2) a sum certain for the amount of damages sought." *Dixon v. United States*, 96 F. Supp. 3d 1364, 1368-69 (S.D. Ga. 2015) (citing *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980)). If a claimant has "not received a letter either proposing a settlement or denying [her] claim within six months after the date [her] claim was filed, [the claimant] may assume [her] claim [wa]s denied . . . [and] proceed to file a lawsuit." 28 C.F.R. § 543.32(i).

The failure-to-exhaust analysis comprises two steps. *Shivers v. United States*, 1 F.4th 924, 935 (11th Cir. 2021) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). First, the court compares the factual allegations in the defendant's motion to dismiss to those in the plaintiff's response. *Id.* (citing *Turner*, 541 F.3d at 1082). If the respective allegations conflict, the court must presume that the plaintiff's version is true, and "[i]f, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (quoting *Turner*, 541 F.3d at 1082).

Second, if the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues

related to exhaustion." *Id.* (quoting *Turner*, 541 F.3d at 1082). "The defendant[]

bear[s] the burden of proving that the plaintiff has failed to exhaust his available

administrative remedies." *Turner*, 541 F.3d at 1082. Upon making findings on the

disputed facts, the court then decides whether, under those findings, the plaintiff has

exhausted her available administrative remedies.

Not surprisingly, at step one, Defendants' and Fleming's respective

allegations conflict. *Compare* Doc. 84 at 9-10; Doc. 99 at 3, *with* Docs. 119, 122.

The undersigned, therefore, must proceed to step two.

Defendants submitted Fleming's grievance history and supplemental briefing

on the issue of exhaustion. Docs. 84-2, 99-1, 99-2, 99-3. The grievance history

submitted by Defendants does not reflect that Fleming exhausted her "social

distancing" claim under the FTCA. *See* Docs. 84-2, 99-1.

But upon closer review, it does not appear that the grievance history

Defendants submitted would reflect Fleming's FTCA-related filings. For example,

Defendants concede that Fleming properly exhausted her "mold and asbestos" and

"failure to protect" claims under the FTCA. Doc. 84 at 10-12; Doc. 99 at 2-3.

Fleming provided copies of the SF-95 forms related to those claims. Doc. 122 at 4,

15; *see* 28 C.F.R. § 543.31; *Dalrymple v. United States*, 460 F.3d 1318, 1322 n.3

(11th Cir. 2006) ("A [SF-95] is the standard form used to file a claim against the

government under the FTCA."); *Tolbert v. Gallup Indian Med. Ctr.*, 555 F. Supp.

3d 1133, 1165-66 (D.N.M. 2021). Her SF-95 form for her "social distancing" claim is dated May 21, 2020, and her SF-95 form for her "failure to protect" claim is dated April 16, 2020. The grievance history provided by Defendants does not reflect these filings. *See* Doc. 99-1 at 26-28. Additionally, although Defendants submitted Fleming's "entire claim files" for the two exhausted claims above, neither file contains the relevant SF-95 form. *See* Docs. 99-2, 99-3.

Furthermore, Fleming provided an SF-95 form dated May 21, 2020, which mentions the pandemic and overcrowding. Doc. 122 at 4. These allegations are sufficient to provide the BOP with notice of the facts underlying Fleming's "social distancing" claim. *West v. Peoples*, 589 F. App'x 923, 927 (11th Cir. 2014) ("While the claimant must apprise the government of its potential liability . . . the claimant is 'not require[d] . . . to provide the agency with a preview of . . . her lawsuit by reciting every possible theory of recovery or every factual detail that might be relevant[.]'") (first citing *Bush v. United States*, 703 F.2d 491, 495 (11th Cir. 1983); then quoting *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999)).

For the above reasons, the undersigned cannot determine at this stage in the litigation whether Fleming properly exhausted her "social distancing" claim.

**(b).    The Discretionary-Function Exception Bars Fleming's Claim**

Although Fleming's "social distancing" claim is not subject to dismissal for failure to exhaust, it still may be subject to dismissal if it is barred by the discretionary-function exception to the FTCA.

The United States generally is immune from suit. *Shivers*, 1 F.4th at 928 (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)); *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). The FTCA is a limited waiver of the United States' sovereign immunity "for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-218 (2008) (citing 28 U.S.C. § 1346(b)(1)); *see Shivers*, 1 F.4th at 930 (noting that Congress created the FTCA "to address violations of *state tort law* committed by federal employees," not to address constitutional violations) (citing *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994)).

But the FTCA's waiver is subject to several exceptions that are "strictly construed" in the United States' favor. *Zelaya*, 781 F.3d at 1322 (quoting *JBP Acquisitions, LP v. United States ex rel. FDIC*, 224 F.3d 1260, 1263-64 (11th Cir. 2000)); *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021). The discretionary-function exception, for example, applies to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency" or employee. *See Douglas*, 814 F.3d at 1273

(quoting 28 U.S.C. § 2680(a)). The exception covers actions, or lack thereof, at both the "operational level" and the "planning level." *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (citing *United States v. Gaubert*, 499 U.S. 315, 325 (1991)). The exception eliminates the United States' liability for conduct that may otherwise have been actionable under state tort law, even if the discretion is abused. *Shivers*, 1 F.4th at 930 (quoting 28 U.S.C. § 2680(a)); *Redmon v. United States*, 934 F.2d 1151, 1157 (10th Cir. 1991); *see Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010).

Courts apply a two-part test to determine whether the discretionary-function exception applies to the challenged conduct. First, courts determine whether the conduct in question involves "an element of judgment or choice." *Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006); *Dickson*, 11 F.4th at 312; *Miller v. United States*, 992 F.3d 878, 885 (9th Cir. 2021). Conduct involves "an element of judgment or choice, . . . unless a federal statute, regulation, or policy specifically prescribes a course of action" with "a fixed or readily ascertainable standard." *Cranford*, 466 F.3d at 958 (citation and quotation marks omitted). Absent an element of judgment or choice, the conduct is nondiscretionary and the exception does not apply. *Ochran v. United States*, 117 F.3d 495, 499 (11th Cir. 1997) (quotation marks omitted).

Second, if the conduct is discretionary, courts then determine whether that discretion "is grounded in considerations of public policy." *Douglas*, 814 F.3d at

1273; *Dickson*, 11 F.4th at 312-13; *Miller*, 992 F.3d at 887-88. The discretion "need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015) (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998)). That is, the court must determine "whether the judgment [or choice] is of the kind that the discretionary function exception was designed to shield." *Shivers*, 1 F.4th at 929 (quoting *Gaubert*, 499 U.S. at 322-23). The exception serves "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Cohen*, 151 F.3d at 1341 (quoting *Gaubert*, 499 U.S. at 323). If the discretionary-function exception applies, the court must dismiss the claim for lack of subject-matter jurisdiction. *Ohlsen v. United States*, 998 F.3d 1143, 1154 (10th Cir. 2021); *Cohen*, 151 F.3d at 1340.

At the pleading stage, plaintiffs must "allege a plausible claim that falls outside the . . . exception." *Douglas*, 814 F.3d at 1276 (citing *Autery v. United States*, 992 F.2d 1523, 1526 n.6 (11th Cir. 1993)); *Dickson*, 11 F.4th at 312.

Fleming's "social distancing" claim is premised on the alleged "overcrowding" at FCIT and FCIT employees' alleged failure to ensure that prisoners at FCIT could socially distance during the COVID-19 pandemic. Doc. 61 at 12 ¶¶ 32-37.

At step one, Fleming fails to identify a federal statute, regulation, or policy that eliminates FCIT employees' discretion in addressing prisoner population or the COVID-19 pandemic and its effects. *See* Doc. 61 at 12. Because the government asserts a facial challenge to Fleming's claim under Rule 12(b)(1) and moves to dismiss the claim under Rule 12(b)(6), factual allegations in, and attachments included with, her supplemental briefing are not relevant. *Newbauer*, 26 F.4th at 934 (Rule 12(b)(6)); *Kennedy*, 998 F.3d at 1230 (Rule 12(b)(1)). Regardless, Fleming's supplemental briefing does not help her. She merely discusses the BOP's "COVID-19 Response Plan" with respect to visits from family and wearing a face mask while indoors. Doc. 134 at 1-2. Fleming fails to connect these directives to her claims of "overcrowding" and inability to socially distance. Thus, it appears that FCIT employees retained discretion regarding the matters about which Fleming complains.

At step two, managing prisoner population and determining the appropriate protective measures to address the COVID-19 pandemic almost certainly involved decisions that are "grounded in considerations of public policy." *Douglas*, 814 F.3d at 1273; *see Nichols v. United States*, No. 19-CV-001-DC, 2021 WL 1746374, at *5-6 (W.D. Tex. Mar. 24, 2021) (discussing that the discretionary-function exception applied to a prison's control of infectious diseases); *Ross v. United States*, No. 4:13-CV-573-A, 2013 WL 5290498, at *4 (N.D. Tex. Sept. 18, 2013) (holding

that claims of "negligent overcrowding" were precluded by the discretionary-function exception); *see Swain v. Junior*, 961 F.3d 1276, 1280 (11th Cir. 2020) ("[P]rison officials are faced with the unenviable (and often thankless) task of maintaining institutional order and security while simultaneously taking proper care of the individuals in their custody."); *Rodriguez-Francisco v. White*, No. 1:20-CV-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020) ("[T]he prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing.").

In short, Fleming fails to plausibly allege that her "social distancing" claim falls outside the discretionary-function exception. *Dickson*, 11 F.4th at 312; *Douglas*, 814 F.3d at 1276; *Chaney v. United States*, 658 F. App'x 984, 990 (11th Cir. 2016). Despite having five opportunities to correct this deficiency, Fleming has failed to do so. Thus, the District Court should dismiss Fleming's "social distancing" claim.

### 2.    *"Failure to Protect" Claim*

Fleming also alleges that the United States is liable under the FTCA because three FCIT employees failed to "secure their post[s]" during a "controlled movement," which allowed Cruz to reenter the education building and "assault"

Fleming.[1] Doc. 61 at 8 ¶¶ 20, 22; *id.* at 12-13 ¶¶ 38-39. Fleming contends that "General Post Rules," as well as verbal orders, require that all doors and gates be secured and locked at the end of a "controlled movement." *Id.* at 8, 13 ¶¶ 22, 39.

Defendants contend that this claim should be dismissed because it is barred by the discretionary-function exception. Doc. 84 at 12. The parties submitted supplemental briefing on this issue. Docs. 127, 128, 138.

Fleming plausibly alleges that her "failure to protect" claim falls outside of the discretionary-function exception. The "General Post Rules," as well as verbal orders, allegedly require that FCIT employees lock and secure doors at the end of a controlled movement. As alleged by Fleming, there is no discretion in these directives. *Garza v. United States*, 161 F. App'x 341, 346 (5th Cir. 2005) (holding that use of the language "will patrol" in post orders at the federal prison precluded application of the discretionary-function exception); *see Middleton v. U.S. Fed.*

---

[1] In her supplemental briefing, Fleming attempts to add that this claim also is based on an FCIT employee's failure to carry her security radio. Doc. 127 at 1. The allegations in Fleming's fifth amended complaint, however, center around three FCIT employees' alleged "fail[ure] to secure their post[s] and negligen[ce] in th[e] common duty of locking doors and gates." Doc. 61 at 13 ¶ 39; *see* Doc. 122 at 15. In her fifth amended complaint, Fleming does not allege that any FCIT employee was negligent for failing to carry a radio. Because of that, the undersigned does not consider Fleming's novel argument in support of this claim. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (noting that courts "[o]rdinarily . . . do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss"); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that a plaintiff cannot raise a claim for the first time in a response to a dispositive motion).

*Bureau of Prisons*, 658 F. App'x 167, 171 (3d Cir. 2016); *Brembry v. United States*, No. 7:10-CV-388, 2011 WL 121741, at *3-6 (W.D. Va. Jan. 13, 2011).

Additionally, because Defendants' motion to dismiss under Rule 12(b)(1) is a facial attack, the District Court may consider only the allegations in Fleming's fifth amended complaint and must accept any well-pleaded allegations as true. But even if the District Court could consider the incident report attached to Defendants' motion to dismiss, that report merely reflects that the responding officer arrived after Fleming and Cruz's first altercation. Doc. 84-1. The report does not explain how or why Cruz came to be present in the education building.

Because Fleming plausibly alleges that her "failure to protect" claim is not barred by the discretionary-function exception, the District Court should not dismiss this claim at this point.

### 3.    *"Mold and Asbestos" Claim*

Fleming next alleges that the United States is liable under the FTCA because FCIT employees failed to repair leaks in Fleming's housing unit, "which caused . . . toxic mold to colonize in the housing units." Doc. 61 at 11 ¶ 31; *id.* ¶¶ 26-28, 30. Because the application of the discretionary-function exception to the FTCA is a jurisdictional matter, the undersigned ordered the parties to address the exception's

application to this claim.[2] *See Zelaya*, 781 F.3d at 1339-40; *Mirmehdi*, 689 F.3d at 984 n.7; *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011).

Fleming fails to identify a federal statute, regulation, or policy that eliminates FCIT employees' discretion in managing mold and asbestos in federal prisons. She instead makes vague references to unidentified "government safety regulations" and "procedures" that FCIT allegedly failed to "implement" and "follow." Doc. 61 at 11 ¶¶ 27-28. The BOP's Program Statement 4200.12—which governs preventive maintenance/inspections and environmental issues at federal prisons—does not even mention mold. BOP Program Statement 4200.12, chs. 5, 8. Because the program statement does not mention mold, it cannot be said that it sets forth a nondiscretionary standard regarding mold. This program statement also does not require the BOP to remove asbestos from federal prisons, contrary to Fleming's allegation. *See id.*, ch. 5, § 6. Thus, BOP employees retain discretion to manage any mold or asbestos found in FCIT. *See* 18 U.S.C. § 4042(a); *Cranford*, 466 F.3d at 958.

Furthermore, the BOP's discretion to address mold and asbestos in BOP facilities is "grounded in considerations of public policy." *Douglas*, 814 F.3d at

---

[2] Defendants move to dismiss this claim because Fleming fails to plausibly allege that FCIT employees were negligent under Florida law. Doc. 84 at 11 n.4. Because the undersigned is recommending dismissal under the discretionary-function exception, the undersigned does not address Defendants' argument that Fleming fails to plausibly allege a negligence claim under Florida law.

1273; *Dickson*, 11 F.4th at 312-13; *Miller*, 992 F.3d at 887-88. That is, the BOP's allocation of resources to and standards for addressing mold and asbestos involve decisions "grounded in social, economic, and political policy." *See Cohen*, 151 F.3d at 1341. The FTCA does not authorize federal courts to second-guess those decisions.

When making decisions about maintenance of prisons—including amelioration of mold and asbestos—BOP employees also most consider the safety of inmates and BOP personnel. "Prisons are tasked with providing safety and security for the inmate population as well as for prison staff . . . ." *Rodriguez v. Burnside*, 38 F.4th 1324, 1335 (11th Cir. 2022). "[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *see Pell v. Procunier*, 417 U.S. 817, 826-27 (1974) ("The 'normal activity' to which a prison is committed—the involuntary confinement and isolation of large numbers of people, some of whom have demonstrated a capacity for violence—necessarily requires that considerable attention be devoted to the maintenance of security.").

BOP employees, therefore, enjoy substantial discretion as they strive to maintain hygienic and healthy prisons while also ensuring security and safety. Courts generally are not permitted to second-guess the discretionary decisions of BOP personnel regarding maintenance of prisons, even if that discretion is sometimes abused.[3] *Shivers*, 1 F.4th at 930; *Redmon*, 934 F.2d at 1157; *see Spotts*, 613 F.3d at 566.

Fleming fails to plausibly allege that her "mold and asbestos" claim is not barred by the discretionary-function exception. *Dickson*, 11 F.4th at 312 *Douglas*, 814 F.3d at 1276; *Chaney*, 658 F. App'x at 990. Despite having four opportunities to correct this deficiency, Fleming has failed to allege facts which indicate that the discretionary-function exception does not apply. The District Court, therefore, should dismiss this claim.

**B.    Fleming's *Bivens* Claims Against Strong**

Fleming also attempts to assert two *Bivens* claims against Warden Strong: an Eighth-Amendment conditions-of-confinement claim and a First-Amendment retaliation claim. Doc. 61 at 13-14. Fleming's Eighth-Amendment claim is based on the alleged prison conditions at FCIT, including the alleged leaky roof, "toxic mold,"

---

[3] Although Fleming contends that BOP employees acted "intentionally or recklessly or both," the subjective intent of a federal employee is irrelevant in determining whether the "discretion is of the typed grounded in public policy." *Zelaya*, 781 F.3d at 1330; *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008).

and insufficient "sanitation and ventilation" during the COVID-19 pandemic.[4] Doc. 61 at 13. Her First-Amendment claim arises from Strong's alleged refusal to transfer Fleming as retaliation for Fleming "filing grievances and tort claims." *Id.* at 14.

Although Defendants move to dismiss these claims for various reasons, Doc. 84 at 12-19, the primary question is whether *Bivens* provides a remedy for Fleming's claims under the Eighth and First Amendments.

The Supreme Court has recognized a *Bivens* claim in only three contexts: (1) a Fourth-Amendment search-and-seizure claim; (2) a Fifth-Amendment sex-discrimination claim; and (3) an Eighth-Amendment claim of inadequate medical care. *Egbert v. Boule*, 596 U.S. __, 142 S. Ct. 1793, 1802 (2022) (citations omitted). Recognizing new causes of action under *Bivens* is disfavored. *Id.* at 1803 (quotation omitted).

Courts address a *Bivens* claim with two questions. First, does the case present a "new *Bivens* context"? *Id.* (quoting *Ziglar v. Abbasi*, 582 U.S. __, 137 S. Ct. 1843, 1859-60 (2017)). Second, if the case presents a new context, do "'special factors' indicat[e] that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting

---

[4] To the extent Fleming is attempting to assert an Eighth-Amendment claim other than a conditions-of-confinement claim, she utterly has failed to clearly identify that claim and support that claim with factual allegations.

*Ziglar*, 137 S. Ct. at 1858). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernández v. Mesa*, 589 U.S. __, 140 S. Ct. 735, 743 (2020)).

### 1.    *The Supreme Court Has Never Recognized Fleming's* **Bivens** *Claims*

As to the first question, a case presents a new *Bivens* context if the case is "'meaningful[ly]' different from the three cases in which the [Supreme] Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1859-60). Factors relevant to this inquiry include:

> the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860. Furthermore, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743.

### (a).    Fleming's Eighth-Amendment Claim

In *Carlson v. Green*, the only Supreme Court case recognizing a *Bivens* remedy under the Eighth Amendment, the claim at issue arose from the prison officials' failure to treat adequately an inmate's "chronic asthmatic condition" and the "gross inadequacy" of the prison's medical facilities and staff as they related to

the inmate's condition. 446 U.S. 14, 16 n.1 (1980). The bases of Fleming's claim are markedly different than the bases in *Carlson*. Fleming's Eighth-Amendment conditions-of-confinement claim relates to the alleged facility conditions and "overcrowding" at FCIT.

Recognizing a *Bivens* remedy for Fleming's conditions-of-confinement claim would threaten "disruptive intrusion by the Judiciary into the functioning of the other branches." *Ziglar*, 137 S. Ct. at 1860. That is, courts would be tasked with instructing the Executive Branch as how to best maintain prison facilities and prisoner population. Furthermore, it is irrelevant that the Supreme Court previously recognized a *Bivens* remedy under the Eighth Amendment. *Hernandez*, 140 S. Ct. at 743.

For these reasons, Fleming's conditions-of-confinement claim presents a new *Bivens* context. *See Mammana v. Barben*, 856 F. App'x 411, 414 (3d Cir. 2021) (holding that an Eighth-Amendment conditions-of-confinement claim presented a new *Bivens* context); *Hill v. Lappin*, 561 F. Supp. 3d 481, 488-90 (M.D. Pa. 2021); *see also Ziglar*, 137 S. Ct. at 1862-65 (declining to extend *Bivens* to a conditions-of-confinement claim under the Fifth Amendment).

### (b).   Fleming's First-Amendment Claim

The analysis of whether Fleming's First-Amendment retaliation claim presents a new *Bivens* context is straightforward.

"[W]e have never held that *Bivens* extends to First Amendment Claims." *Egbert*, 142 S. Ct. at 1807 (quoting *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *Mendoza v. Edge*, __ F. Supp. 3d __, 2022 WL 3097377, at *4 (E.D.N.Y. 2022) (same); *see Johnson v. Burden*, 781 F. App'x 833, 836-37 (11th Cir. 2019). As with her conditions-of-confinement claim, Fleming's First-Amendment retaliation claim presents a new *Bivens* context.

### 2.    *Special Factors Counsel Against Recognizing a* Bivens *Remedy*

Because both of Fleming's claims present new *Bivens* claims not previously recognized by the Supreme Court, the District Court must determine whether "special factors" counsel against recognizing a remedy under *Bivens* for Fleming's claims.

Several factors counsel against recognizing a *Bivens* remedy in the contexts Fleming proposes. *Egbert*, 142 S. Ct. at 1805, 1807 (first quoting *United States v. Stanley*, 483 U.S. 669, 683 (1987); then quoting *Ziglar*, 137 S. Ct. at 1858). In particular, the availability of alternate remedies for prisoners and separation-of-powers concerns counsel against recognizing a *Bivens* remedy for an Eighth-Amendment conditions-of-confinement claim. *Mammana*, 856 F. App'x at 414-16 (declining to extend *Bivens* to Eighth-Amendment conditions-of-confinement claims in light of "the availability of alternate remedies" and "separation-of-powers concerns"). These factors also weigh against recognizing a *Bivens* remedy for a

First-Amendment retaliation claim. *Mack v. Yost*, 968 F.3d 311, 321-22 (3d Cir. 2020) (noting that prisoners have available to them the BOP's administrative remedy program and that a *Bivens* remedy in the First-Amendment context would intrude on the BOP's administrative decisions); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020). Fleming instead may seek relief through the BOP's grievance process or by asserting a claim under the FTCA. Thus, the District Court also should dismiss the Eighth-Amendment and First-Amendment claims Fleming attempts to assert under *Bivens*.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1.      **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss, Doc. 84, as follows:

        a.      **DENY** Defendants' motion with respect to Fleming's "failure to protect" claim under the FTCA.

        b.      **GRANT** Defendants' motion in all other respects.

2.      Recommit this case to the undersigned for further proceedings.

At Pensacola, Florida, this 3rd day of October, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address all preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**